And we move to the fourth case this morning, McMahan v. Deutsche Bank. Novoselsky. May it please the court, Jonathan Novoselsky on behalf of the plaintiff appellants in this matter. This appeal is a two-issue appeal. One is the dismissal for lack of prosecution against claims the plaintiffs filed against the McLadry and Goldstein defendants. McLadry is now formally known as American Express Business Services. This also is about the grant of summary judgment in favor of the Deutsche Bank defendants. I'm going to start on the issue of dismissal for lack of prosecution. Plaintiffs feel that the court erred in dismissing this matter for lack of prosecution. There had been no deadlines missed by the plaintiff's counsel at the trial level before the matter was dismissed for lack of prosecution. There were no deadlines in place by the court when the matter was dismissed. There were no prior discovery violations. There were no orders requiring compliance with any deadlines at this time. There were no warnings given to plaintiff or plaintiff's counsel that dismissal would occur should action not happen in the courts. Essentially, this matter was dismissed with no notice to the plaintiff prior to the motion to dismiss it being filed. The Ellingsworth v. Chrysler case from this court states that dismissal with prejudice is a harsh sanction and should only be employed in extreme situations when there is a clear record of delay or dilatory conduct or when other less drastic sanctions have proved unavailing. Here we have no clear record of delay. Granted, there was a 16-month gap between the last action in the district court and the filing of the motion to dismiss, but during that time frame, there was action going on behind the docket, so to speak. There were negotiations about expert witnesses, and not a mere two days before the motion was filed, plaintiff's counsel at the trial level had sent a stipulation over to the defense counsel to get the matter set for arbitration. There's been no showing that there was any willful disobedience on behalf of plaintiff or plaintiff's trial counsel. No less drastic sanctions, such as an order compelling compliance with some deadline, was entered. This dismissal for the lack of prosecution was the only penalty entered by the trial court. This same axiom from Ellingsworth v. Chrysler was followed by this court in Dunphy v. McKee, which states that there needs to be some clear pattern of delay followed by some other sanction entered before you can dismiss for lack of prosecution. Again, here we have albeit a lengthy time period between when this case was last up in court and when the dismissal was entered, but this doesn't necessarily mean on its face that the prosecution wasn't being actively pursued by plaintiff or plaintiff's counsel. Again, there was action going on behind the scenes, so to speak. Well, there was a lot going on, and that's just one part of the problems about whether the question of this whole tax, I don't want to call it a scheme, whatever you want to call it, but it should have become apparent that it was certainly questionable, kind of alerting your client that maybe there's got a problem and maybe has to deal with it. I don't know when that would start, but it seems that there was a lot of signals out there, especially a guy that's got that kind of money depending on it, that he would be alerted in talking to a lot of people about, hey, is this good, bad, or different, or what do I need to do? Yes, Your Honor. I believe you're referring to the summary judgment that was entered with regards to the discovery rule of when Dr. McMahon should have known to file a lawsuit against his financial advisors. That is laid out in the Kahn case, which was actually about the same type of scheme. It's an Illinois case where the discovery rule was applied when the notice of tax liability was issued. Well, of course, that's the end zone. Correct. That's pretty bad. Once that happens, now you have to react and you have to do your own defense the whole way once that happens. And I'm just thinking about what occurred in, what is it, about five years or something? Yes, the audit was implemented in 2005, and the notice of tax liability came down in 2010. And then they filed this lawsuit in state court in 2012, which under the Kahn case would have been within the statute. However, the district court applied a different standard from the motion to dismiss, which ruled under Kahn the case can go forward, versus under summary judgment, where it used Lane v. Deutsche Bank to state that the plaintiffs knew or should have known they were defrauded or allegedly defrauded in 2005. I feel that's incorrect. They're factually distinct cases. The Kahn case is directly on point, as it is about one of these son-of-a-boss tax shelters. But I just wonder if there's some things that maybe they didn't say anything, he wouldn't get caught. Maybe somebody wouldn't detect it or something. I'm not sure. It's a pretty big deduction. It is, and there was a lot of money at issue in this tax liability. It's well over a million dollars, to the best of my recollection. Did the district court ever give you any kind of opportunity to explain the delay? You say there was a great deal going on behind the docket. Did the district court give you a chance to explain that? Unfortunately, I was not trial counsel on this matter. What does the record show? The record is unfortunately silent as to what was going on behind the scenes in that 16-month period. No, but is the record silent on whether the district court gave you or your side an opportunity to explain this problem? There was a response filed to the motion to dismiss for lack of prosecution where trial counsel asserted that things were going on behind the scenes and that the email was sent not two days before the motion was filed trying to get the matter set for arbitration. There was the unfortunate passing of Mr. Goldstein that took place during that 16-month time period. Both one of the defendants and a key witness died. Exactly, yes. That delayed the proceedings further. But there's no indication that the district judge was informed of all this, was there? Unfortunately, the record is silent on that issue, Your Honor. However, as the case law has cited before this court, there needs to be some kind of warning given before you can dismiss a matter for lack of prosecution. There needs to be some clear pattern of dilatory conduct. While the record is silent for a 16-month period, there was no pattern of discovery violations that took place before that matter. There was no missed court dates that took place. There was just a rather large gap of time, admittedly, between when this was in court, the scheduling of arbitration, and the filing of the motion to dismiss for lack of prosecution. What about other persons who were, I don't know how many people invested or followed this advice? Were things going on with others, settling, paying, denying, etc.? Was there a lot of activity? I don't know how many people were involved in this. Do you? To my knowledge, I just did a brief bit of research on what a son of boss tax shelter was before getting involved in this matter myself. I think there are something like six active son of boss litigations going on in various courts throughout the country right now. According to Wikipedia, which I know is not the most reliable source, but my client is hardly— Some judges rely on it. Some law students did, too, at one point. Maybe some taxpayers did. I'm just curious about it because there's going to be knowledge of other people dealing with this. I'm not clear about settlements and amounts offered, and I really don't understand it, frankly. Unfortunately, I don't have that knowledge, Your Honor. I do know that my client is a physician. He's not a financial professional. This application of the rule in Lane tasks him with the knowledge that once the audit was implemented, he should have known that something bad happened, not just he was being audited because he's a wealthy individual with significant deductions on his taxes for that year. I see that I'm running out of time. I'd like to, if there are no further questions, reverse the order if you asked for rebuttal. Thank you. Ms. Fishman? Yes. Unaman, I guess. Fishman Unaman. Your name, please. Lynn Fishman Unaman. May it please the Court, I am Lynn Fishman Unaman, and I am representing the American Express defendants and Mr. Goldstein. Before I address the points that I had outlined, I would like to address certain of the points that the Court asked Mr. Novoselsky. First, the District Court did give the plaintiff here a full opportunity to explain the delay. Indeed, on the District Court record document number 83 is an affidavit of trial counsel, and as part of that as well is an affidavit by Mr. McMahon. And interestingly, it talks about that they were allegedly behind the scenes trying to get an expert. An expert, I submit, was not necessary in order to commence an arbitration, which had been ordered in December of 2013, and other than some rudimentary contact in February of 2014, trial counsel was not consulted again until December of 2015. And the reason that Mr. McMahon offered as to why he did not proceed with the arbitration was that he did not have the money to commence the arbitration. Well, this Court has already disposed of that issue in the McDonald case, and in that case, which we cite in our brief, the Court said the fact that you may not have money to commence the arbitration is of no moment. Indeed, the Court said once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court. A party cannot decide for itself when it feels like pressing its action and when it feels like taking a break. And that's exactly what happened here. Now, the standard for reversal here is an abuse of discretion, and this Court has articulated that in the context of Rule 41B, that means that this Court must find that the district court was fundamentally wrong, or that it is clear that no reasonable person could concur in the district court's assessment. That's right. No reasonable person? Yes. That means if we disagree with the district judge, we've got to commit... Excuse me? I'm sorry, Your Honor? That means if we disagree with the district judge, we have to commit him. No reasonable person? Well, no, I don't think. That's what I mean. That's rhetoric. I am reading from the oral light decision. I understand that, but that is really, at best, judicial rhetoric, right? I would agree, but fundamentally wrong, I think, is sufficient in this context. That's different. Because we need to see what did the district court have before it at the time. It had a plaintiff who was ordered to arbitration, yet did nothing, absolutely nothing, for 16 months. And this was in a matter where the operative facts dated back to 2000 and 2001. At this point, this case is 18 years old. And the operative facts hinged entirely on statements alleged to be made by Mr. Goldstein. Indeed, this was a fraud, and it was a negligent misrepresentation case. And so the complaint says, Mr. Goldstein told me X. This was not a case where there was other evidence. And to top all this off and complete the picture, Mr. Goldstein passed away during this period of inaction. The district court set forth the standard in oral light. If we look at the decision, it clearly says the district court has recognized here that in deciding whether to dismiss a case for want of prosecution pursuant to 41B, I'm supposed to consider the frequency and magnitude of the plaintiff's failure to comply with deadlines, the apportionment of responsibility for those failures between the plaintiff and his counsel. Here, plaintiff's counsel acknowledged that he warned Mr. McMahon that a dismissal motion might be in the offing. And the effect on the calendar and the prejudice. Now, the district court further acknowledged that even though the plaintiff did not fail to comply with any express deadlines, they were aware that they were compelled to prosecute the case in arbitration, but that plaintiff's counsel acknowledged in his e-mail to TBS's counsel it has been a long time since we have communicated. Here, the delay combined with the prejudice was ample reason for the district court to dismiss the case, and we would urge that this court affirm. Thank you. Thank you, counsel. Mr. Taffet. May it please the court. Alan Taffet on behalf of the Deutsche Bank appellees. Seventeen years ago, appellant John McMahon participated for the second time in a so-called son-of-boss tax shelter strategy. McMahon alleged that he paid fees, which were among his damages, to the Jenkins and Gilchrist law firm, to his accountant, Robert Goldstein, and to Deutsche Bank back in 2001, and they misrepresented to him the legitimacy of the tax shelter strategy. Now, the sole remaining claim he has against Deutsche Bank is that it aided and abetted the law firm Jenkins and Gilchrist's breach of fiduciary duties. The undisputed evidentiary record, as correctly noted by the district court, established that McMahon knew, or should have known by February 2005 at the latest, that his alleged injuries were allegedly wrongfully caused by the defendants, and his lawsuit here is untimely. So by 2002, McMahon's accountant told him, on the undisputed record here, that the son-of-boss tax strategy was no longer valid. So it's really over by 2002. By 2004, McMahon had hired tax litigation counsel, who sent a letter to Deutsche Bank expressing concern that the IRS might discover McMahon's involvement in the son-of-boss shelter, and instructed Deutsche Bank not to disclose his identity to the IRS. No. What in context is that? That's a curious problem. And that, to your Honor's point earlier, it appears as though McMahon did a 2000 tax shelter as well, and the IRS looks like did not go after him before the statute of limitations lapsed. So it looks as though he was hoping his participation here would not be discovered. And so his tax counsel is writing to Deutsche Bank. It's unclear, as the district court found, under what basis his name would be disclosed or under what privilege Deutsche Bank would not be able to disclose it, but it shows consciousness by McMahon of what the IRS's position is and the illegitimacy of the tax shelter, and to the extent he's bringing claims that he was told one thing in 2000-2001, it's now been contradicted. All the elements of his claim are available to him. He paid fees for this tax strategy, and that's among his damages. So we're saying 2002-2004, it's so easy to see that even under the discovery rule, it's his time to bring an action that is triggered. But there's more. In January 2005, McMahon's tax litigation counsel had already told him that the IRS had announced one of these penalty amnesty programs, and in that had concluded that this son-of-a-boss shelter was, in the IRS's view, abusive. That's their parlance for an illegal tax shelter, and separately told him about the Illinois tax amnesty program. And then we get to February 2005. McMahon's tax litigation counsel informs him by letter that the law firm of Jenkins & Gilchrest had agreed to pay more than $81 million to settle a class action that had been filed in the Southern District of New York back in 2003. This again goes to Your Honor's point about what was going on in the background. There had been Senate investigations, 60-minute stories, media pieces. There were various accounting firms involved in various shelters. Ernst & Young, this Jenkins & Gilchrest law firm, blew up over this. They don't exist anymore. So there was a lot of press out there. But in February 2005, his own counsel, and this is in the record, tells him about the class action settlement, which had the identical claims, that 2003 case that McMahon first makes in 2012. McMahon was a class member in the prior case. Did he have any access to that big settlement? He did. In fact, he participated in it. He later submitted a claim form. Did he get any money? He did. He got $40,000, which he has, again, it's in the record, that he says were improper fees he paid to Jenkins & Gilchrest back in 2001 for their improper advice. And so all of this is in the record. Unlike the Prince of the Con case was based on a pleading and allegations in a pleading. Lane's pleading was more extensive, so the record was filled out. And so to Your Honor's point about the end zone, the court started the same way. There could be events that happened earlier, and here the record was fleshed out in very circumscribed summary judgment to show how much he knew, starting with in 2002 when his accountant told him, remember what I told you a year before? Well, now the tax shelter is invalid. So I say that I'm out of time unless there are other questions from the panel. We'd ask respectfully that the court be affirmed. Thank you. Very briefly, Your Honors, with respect to the dismissal for lack of prosecution, the only opportunity that plaintiff was given to respond was in responding to that motion to dismiss for lack of prosecution. I would emphasize that there were no deadlines in place. The court simply ordered that this matter go to arbitration. With regards to the discovery rule, the district court initially disagreed with this thought that Dr. McMahon had to file suit based on a 2005 discovery. It was initially raised in a motion to dismiss this matter. This was denied by Judge Zagel, who relied on the Kahn case, which was stated that until 2010, there were no damages for entering into this tax shelter. And if there are no further questions, I will ask that this court reverse this matter. Thank you. Thank you, counsel. Thanks to both counsel, and the case is taken under advice.